Case No. 14-6249, Independence Institute of Colorado Nonprofit Corporation Appellant v. Federal Election Commission. Mr. Dickerson for the appellant, Mr. Mueller for the appellate. Good morning. Good morning, your honors. May it please the court, my name is Alan Dickerson. I appear today on behalf of the Independence Institute. I'm joined by my colleague, Tyler Martinez. When Congress amended the Federal Election Campaign Act in 2002, it recognized the possibility that the courts would consider portions of that law unconstitutional. Consequently, it took steps to ensure the swift and orderly consideration of those cases. In particular, it stated that cases must be brought in the district court for the circuit, and that they must be heard by a three-judge court with review only by the U.S. Supreme Court. The statutory language is clear and unambiguous. But the courts have created a slight exception. Where a constitutional claim has been foreclosed by the Supreme Court, a single district judge may dismiss the case without first convening the three-judge court. Here, the FEC argues, and the district court agreed, that a small portion of the Citizens United decision forecloses the Institute's claims. This is incorrect for two reasons. First, Why do you call it a small portion of the Citizens United? Well, Disclosure, it's a big deal, right? Well, Citizens United taking up a disclosure issue. It's not a small portion, that was significant. Well, I respectfully disagree in two senses. It's not what got all the headlines, but Disclosure overall, and disclosure and disclaimer, which are two separate issues, you know, it's on the face of the ad, which is not an issue here. And the scope of the underlying donor disclosure that's going on are a small, I would argue a small portion of the case. But that's not what I mean when I say a small portion of Citizens United. What I mean is that the Citizens United plaintiff asked for any ad that was not the functional equivalent of express advocacy to be excluded. And it is true that Justice Kennedy spends time discussing why that standard does not apply. But that's not what we're asking for. We're saying that there's still a remnant of the Buckley decision that says the cases that simply have no connection to an election are excluded from registration and reporting requirements. That portion, that argument, is addressed, if at all, only in one paragraph of the Citizens United opinion, where there's no authority whatsoever, and where Justice Kennedy appears to say, well, does say the sentence sort of generally, that there's an informational interest in knowing who is speaking about a candidate before an election. In some senses, that sentence is the heart of this case. The question is whether that sentence, which again- Which sentence, again? That even if the advertisements, and I'm paraphrasing, but even if the advertisements that issue in Citizens United were merely commercial speech, that there's nonetheless an informational interest in knowing who is speaking about a candidate- Yeah, the public has an interest in knowing who is speaking about a candidate shortly before an election. Yes. So, to dissect that, because I do agree that that's the center of what's at stake here, or at least on the first prong of our argument. First of all, I mean, to the extent that Justice Kennedy is announcing a new standard of the informational interest from the one that was announced in Buckley, which is the constituencies of candidates knowing who stands behind an elected official, it's strange that he would sort of drastically narrow the Buckley decision without any citation to it or any reference whatsoever to the fact he was doing so. The Seventh Circuit, for this reason among others, considered this passage dicta in the Barland decision. First of all, that. Second of all, even if it is true that the Court has announced a new informational interest, which I think is the most generous interpretation that can be given to the FEC, that section says nothing about tailoring, which is part of an exacting scrutiny analysis. Even if there is now a generalized interest in who is speaking before an election, under exacting scrutiny, the state must still show some connection between the disclosures requesting and that new interest. And I think, you know, if you were to diagram that sentence, you know, who is speaking shortly before an election, well, everyone knows who is speaking shortly before an election. It's the Independence Institute. That's stated on the face of the ad. These sort of considerations haven't been considered by the Court, because the Court was asked to apply a functional equivalent of express advocacy standard and not an unambiguously campaign-related standard. That standard hasn't been applied since Buckley, and therefore can't be proposed. The difference between those two standards is? The difference between those two standards is whether or not something says the equivalent of vote for this person or vote against this person, or instead is more like our speech, where there's simply no connection whatsoever to an election. This goes back to the McConnell decision. No, what's the difference between the two standards? The difference between the two standards is, and I think in some ways this is a sign of how insular campaign finance law has become, is the vast gulf between a communication that can only be understood as asking someone to vote for or against a candidate. Okay, that's functional. That's the functional equivalent of express advocacy. Okay, and what's unambiguously campaign-related? Unambiguously campaign-related would be something which is related to the campaign. So take the ads at issue in Hillary, or the ads for the Hillary movie in Citizens United. Now, each of those ads was related only to the fact that Hillary Clinton was running for president. They're related to the campaign, if not to which side you should vote for. They were speech about the fact this woman was running for president. That's different from an incidental mention of an officeholder in the context of a very different communication, a communication about pending legislation in the Senate. That's our argument, that genuine issue speech and political speech have been different ever since Buckley, and that one sentence by Justice Kennedy can't change that fact without saying so, and that even if he did change the fact as regards the underlying standard, that nonetheless does not change the fact that the government was demonstrating tailoring, and it has never done so under that second standard, the unambiguously campaign-related standard. The second point I'd make is that the court has never reviewed a policy, which is the current policy. I thought unambiguously campaign-related was something akin to functional equivalent of express advocacy. And it may be, Your Honor. And if it is, then by rejecting this in Citizens United, the court wasn't just Justice Kennedy. The court rejected your argument here. I realize you might dispute the premise, but if you accept the premise that the two things are essentially the same, then Citizens United resolve it. And you can, of course, ask the Supreme Court to refine that precedent, but I'm not sure that the district court here or we can. And I take the point. I think the response is that we're sitting here on a jurisdictional statute for interpretation question. This isn't a merits hearing. Right. And, you know, the fact that that might be a correct merits determination, correct merits analysis. But the gloss on the jurisdictional statute is foreclosed by precedent. Well, not just foreclosed by precedent, so foreclosed that there can be no honest disagreements of opinion. And I would suggest that, you know, going back and reading Buckley, this idea that disclosure intrudes on civil society's ability to discuss issues and that that's the entire reason for these various standards, it would be strange if the Supreme Court had walked that back without explanation. And that's honestly the position the FEC has taken. Don't you think the Supreme Court here was considering issue ads and disclosure of donors behind issue ads? That seems to be what they were. That was the whole case in some respects, right? Citizens United are. I mean, not the whole case, but that was one of the big issues that was. I don't dispute that the issue is for the court. The difference is that the standard we're asking for is a different standard than the one Citizens United asked for. So in that sense, almost by definition, it was DICTA. And that was the position of the Seventh Circuit. The Seventh Circuit said this is DICTA because you'd already decided these were the functional equivalent of express advocacy. And if the Seventh Circuit thinks that, I think that there is a good faith disagreement on whether this question has been fully foreclosed by the Supreme Court. And if that's the standard, then absolutely we should have this discussion, but we should have it in front of a three-judge district court as Congress required. You don't dispute, though, that the gloss that the courts have put on the statute, we have to take that as a given because the Supreme Court itself has similar three-judge district court statutes. To a point. Because actually, if you look at the statutory language, at least I wouldn't have put the gloss on there. I would have just said you automatically refer to a three-judge district court, but that seems long since established that there is a gloss on those statutes. I think that's true, but I think there's a disagreement on what that gloss is. Our position is, again, that there can't be a good faith disagreement about whether the issue is foreclosed. The FEC has cited authority from the 70s coming out of a statute that was repealed in 1976 saying that there's this policy of keeping cases out of the Supreme Court's required appellate jurisdiction. I mean, that was a statute that required all requests for injunctive relief on constitutional grounds against state and federal statutes to be heard by a three-judge court. It created enormous problems. That was 2281. It referred to 2284. This statute refers to 2284. Put it all in a stew together, and it seems like those same considerations would apply to this statute. You can challenge me on that, but that's... I would suggest otherwise. I think the district court, for our disagreements with this decision, did correctly state the standard and that this policy of trying to keep these cases out of the Supreme Court is not supported by anything the Supreme Court has said on this statute, on this required reveal. So you're saying there's a substantial issue here that should have gone to the three-judge district court because the phrase unambiguously campaign-related is not the same as express advocacy. Correct. And also because in light of the Van Hollen decision, there's now greater donor disclosure for speech that merely mentions a candidate for office, as R.I.P. had does, than for speech that actually says vote for or vote against, which is irrational and suggests that it might fail exacting scrutiny, and the court has never considered that question. I see my time has expired. Thank you. Good morning. Good morning. May it please the Court, Greg Mueller for the Eppley Federal Election Commission. With me today are Kevin Beley and Erin Klopach. The district court's decision should be affirmed in its entirety. An eight-justice majority of the Supreme Court in two cases has upheld the electioneering communication disclosure provision addressing the issues presented here. I mean, you'll acknowledge, won't you, that the ad here is different than the ad in Citizens United, right? There's something qualitatively different about this ad. I don't think there's anything qualitatively different about the ad. In your argument, it may fit in the same box for electioneering communications, but I'm just saying there is something different about it, right? Not with respect to what the analysis of the Supreme Court in the Citizens United case. It focused on the broad criteria of what an electioneering communication is, meaning run in the right time frame, directed at the relevant broadcast market. If this ad had not mentioned Senator Udall and just said, call your Colorado senators, would that be a distinction that makes a difference here? The court's focus, I think if it didn't fall within the scope of the electioneering communication provision, it wouldn't be here. Was that outside the scope if you just say call your elected representatives instead of saying call Senator Udall? It has to identify a candidate, and it did in this instance, and the court's focus was because the interest that the court found was a public interest, an important public interest in identifying the source or the funders of electioneering communications to provide the voters with information during that time period. What's your answer to your opponent's argument that there's a significant difference between unambiguously campaign-related and express advocacy? Well, there isn't a difference that matters here, and let me explain why. He places great weight on Buckley v. Vallejo as a decision. Our position is that Citizens United squarely addresses the circumstances here, and importing those standards, that discussion from Buckley v. Vallejo doesn't make any sense here because what the court was doing there was construing an ambiguous statute and construing it in the face of over-breath. The court in Citizens United expressly rejected that approach and said we don't need to do that here because we have a statute that isn't over-broad. It's quite tailored in a lot of respects, and so the court didn't head down that Buckley path, and quite intentionally so. So we're in a really different spot here then, and the reliance on Buckley is in its place. But do you think there's a difference between those two standards? Unambiguously, no. And in fact, the court was just the unambiguously campaign-related was a later description that when read in context is referring to the earlier description of the functional equivalent of express advocacy. So it doesn't make sense to enshrine that as some term of art unto itself. Your point is that it's the same as functional equivalent of express advocacy, or at least very similar. Therefore, when Citizens United rejects functional equivalent of express advocacy as a limit on the disclosure requirements, it's necessarily rejecting unambiguously campaign-related as well. Exactly, Your Honor, and the Supreme Court was very explicit in that. There was nothing implicit about it. It said so in so many words. Explicit in what? It said we declined to adopt that standard here in Citizens United and instead balanced the important governmental interest in providing information about the funders of pre-election broadcast ads against the burden, and it noted how tailored the statute was. For example, the scope of the statute, the scope of disclosure is limited in a number of respects that limited the burden significantly, and that was part of the court's description. Mr. Dickerson referenced the Barlin decision and suggested that the Citizens United discussion was dicta, but actually the Barlin case did not say that the Citizens United portion was dicta, and it explicitly adopted or embraced the Citizens United standard with respect to federal electionary communications. It was talking about a Wisconsin state law statute that was more like the statute that was analyzed in Buckley v. Vallejo and decided that the $300 threshold and the ongoing reporting obligations were too great. So I think Barlin has no real application here, and to the extent that it has any application, that circuit, as has many others that we listed in our briefs, have embraced the distinction that the Supreme Court made in Citizens United. It did call it dicta, though, this passage, as I read the Seventh Circuit decision. Later in the opinion, it talked about the holding with respect to the federal electionary communications decisions, and it wasn't talking about it as dicta there and embraced it as a standard. So I think when read in its entirety, the Seventh Circuit wasn't taking on or backing away from what the court produced. And your point, in any event, is, well, they interpreted Citizens United the same way. They might have called it dicta, and you disagree with that, but the bottom line is they interpreted the Citizens United this way. It was, exactly, and a number of other circuits have embraced that holding, including the Third Circuit and Delaware Strong Families we submitted as part of a 28-J letter in this case. So under the standard you're arguing for, tell me a case in which there's an as-applied challenge to an ad that gets to a three-judge district court. Do any of them, or is the law just? No, and the court laid out those as-applied challenges. In providing an exemption, it had concern about the burden of disclosure and laid out specifically the types of as-applied challenges that could be brought, and it specifically laid out where donors face a, and it's not the highest of standards, a reasonable probability of threats, harassment, or reprisals as a result of the disclosure. Anything else besides that? No, Your Honor. So those are the only ones that are going to get to a three-judge district court? Well, we have an ad. On this topic. Yeah. We have the ad that this is an as-applied challenge with respect to this case, and so with respect to this ad, so it's clearly not appropriate here. I can't really speak to, there may well be other as-applied challenges. Plaintiffs can be creative. I think I know your answer, but I just want to make sure. If someone's arguing that a Supreme Court decision should be overruled, can you get a three-judge district court? No, Your Honor. If it's foreclosed by precedent, the three-judge district court statute was designed to have new provisions quickly reviewed or novel questions after the Supreme Court has weighed in and addressed it. And what's particularly important about this case. Let's suppose there is true dicta, and we can, true dicta in a Supreme Court opinion that would foreclose the position, but it is just accept that it's dicta. Would you get a three-judge district court to argue that the lower court should not follow that dicta or that dicta is incorrect? Well, first, I mean, it's important to note that I don't believe it is dicta. I understand. If you're accepting your premise, I think there's authority that says that even dicta of the Supreme Court is entitled to a great way. If it's not foreclosed by Supreme Court precedent, then under Feinberg, the Feinberg case that is the law of this circuit, I think where you are. To say it's dicta is to say it's not foreclosed by precedent. At least that's one interpretation of dicta. So that would suggest it would get to a three-judge court if it were truly dicta. I believe that's right, Your Honor. Okay. One of the things that's very important to note about Citizens United is it's not just that the holding encompasses case. It's that they brought the very same arguments, and the very same arguments were rejected by the Supreme Court. So in this case, there's a particularly strong argument that the case is foreclosed because it's the same arguments that were recently rejected by Yes, but arguments are based on facts, right? And I keep coming back to there's something that feels very different about this ad than the ad in Citizens United. Now, I know your argument is that it fits within the box of what we call electioneering communications. But nevertheless, it feels different than what they were dealing with. I understand, Judge Griffith. I think every new advertisement doesn't give you a right to a three-judge district court and direct appeal to the Supreme Court. I think it's the relevant factors within the ad that make it important, make it relevant to the electioneering disclosure, electioneering communication context. But the purpose of the ads in Citizens United was to persuade people to oppose Senator Clinton's campaign, right? There's no such purpose involved. You couldn't tell from this ad whether someone was encouraging a voter to vote for or against Senator Udall. And that's exactly right. But there isn't a requirement for the court to delve into the subjective purpose or intent of the ad. It is an objective right-line box that has been set up. A Procrustean grid, right, upon which the First Amendment is sometimes placed. But also, the whole thing of the court addresses that. It says that the important governmental interest is in the electorate voters knowing who's talking about candidates before the election. And there's a very close fit to that interest by the statute. And so we don't have to delve into the intent. But why are we interested in when people are talking about candidates? What does that mean? Talking about candidates triggers this governmental interest, right? Well, that's in broadcast ads. But what's the governmental interest that it triggers? They said that the court was— Right, it's outcome of elections. And was there anything about this ad that was going to affect the outcome of the election? They said it was very important for the public to be able to evaluate the information that they were receiving to understand who the funders— But that had nothing to do with the election. Well, I think that regardless of that— They said call Senator Udall, call Senator Bennett. But you kind of need to know who the funders are to make that decision, whether it has anything to do with the election or not. But if the legislation were being considered a couple months earlier, the same ad, you would not have had to disclose the donors. And the court has reviewed those concerns both— So to the extent the flaw in the box arguably set up here is it assumes legislation ends at one point and then the election season kicks off. But as we all know, legislation still is being voted on right up until elections. To the extent your real concern as an anonymous donor is about legislation, you're being chilled from expressing your views about that legislation because of the overlap of the election, which you may not care about. And the court did consider that in CUN McConnell and gave greater weight to the public interest in disclosing the funders. But even an ad like this communicates, I guess, at least three things. One, this bill is good policy. Two, you listeners should agree that this bill is good policy. And three, Senators Bennett and Udall don't currently support this bill, right? And so when you convey those three points of information, you're telling people during the election season that this person who's standing for re-election doesn't currently support something that we think is good policy and that you should think is good policy. Couldn't that be important to a potential vote? I believe so, Your Honor, but the statute embraced it more broadly so that we don't have to step into an analysis like that with respect to every ad. It presumes the importance of the discussion in the period before the election. Would you address the mootness issue? You haven't said anything about it. Do you still think it's moot in light of the press release? We don't dispute that they likely fall within the capable of repetition yet evading review standards. Thank you, Your Honor. Thank you very much. Citizens United was an as-applied case. And by force of that fact, the discussion the court had about over-breath of the statute with regard to some ads, which I think there's been some agreement here, are decisively different from the ad here, suggests that the case cannot foreclose a case that brings forth precisely the sort of genuine issue speech that motivated the entire Buckley decision. The reason the Buckley court considered FICA over-broad was because it reached speech exactly like this, was precisely because it would make it impossible to discuss issues of public policy shortly before an election. That's also why this court invalidated the portion of FICA that would have required political committee registration if you discussed a candidate in the context of their official duties. That was declared invalid by this court en banc in 1975. So that's the first point. The second is the fit between the statute and the disclosure interest has been completely changed since Citizens United. As a result of the Van Hollen decision, sitting here right now, the law is that if we run our ad, which doesn't ask you to vote for anyone, it has nothing to do with the election, we have to disclose all donors to the organization. But if we were to run an ad, which we can't because we're a 501c3 and we're barred by federal tax law from doing so, but if we were to run an ad that said vote against this senator, we would only have to give earmarked contributors to the public. That makes no sense. That is not a tailored statute, and that isn't an argument the Supreme Court has ever considered. That alone is enough to say, no, that the tailoring between this particular disclosure and this particular ad, the ads in Citizens United aren't similar enough, and the disclosure issue in Citizens United aren't similar enough. And that's enough to suggest that there's an open question here that should go to a three-judge court. And finally, on the question of the as-applied issue, the FEC has authority to give exceptions from disclosure for people who are subject to threats, harassment, or reprisal. It has done so once for the Socialist Workers Party because the Supreme Court ordered it to do so. That is the only as-applied exception that's been granted in the history of the act. And so I would suggest that suggesting that that is the remedy available to the public is a little bit illusory. Thank you very much. Thank you very much. The case is submitted.
judges: Griffith, Kavanaugh, Wilkins